Davis, J.,
delivered the opinion of the court:
These motions were made on behalf of the Attorney-General at the opening of the term on Monday last. In each case-the defendants move to examine the claimants under the provisions of section 1080 of the Revised Statutes. In each the claimant is a corporation. In the ease of the Atchison, Topeka and Santa Fé Railroad Company the power of the court to compel a corporation to submit itself to such compulsory examination is denied. In the case of the Pacific Railroad of .Missouri the claimant’s counsel appears and consents to the granting of the order. Inasmuch, however, as we cannot, even when parties consent, grant an order which we have no power to grant, it is necessary in the second case also to consider the questions raised in the first case. For our own convenience we treat the cases together. What we have now to say applies equally to both, unless otherwise indicated.
*3 Tbe question for decision turns upon the construction to be put upon sections 1079 and 10S0 of the Revised Statutes. These provisions will be better understood if we briefly recall the history of the legislation which preceded them.
In the eighth section of the Act March 3, 1863 (12 Stat. L., 765), reorganizing this court, it was enacted :
“That it shall be lawful for said court, at the instance of the solicitor for the United States, to make an order in any case pending in said court directing that the claimant or claimants in such case, or any one or more of them, shall appear, upon reasonable notice, before any commissioner of said court, and be examined on oath or affirmation touching any or all matters pertaining to said claim. And the examination of such claimant or claimants shall be reduced to •writing by the said commissioner, and be returned to and tiled in said court, and may, at the discretion of the solicitor for the United States, be read and used as evidence on the trial of said cause. And if any claimant or claimants, after such order has been made, and due and reasonable notice thereof given to him or them, shall fail to. appear or shall refuse to testify or answer fully as to all matters within his knowledge material to the issue, the said court may, in its discretion, order that the said cause shall not be brought forward for trial until the said claimant or claimants shall have fully complied with the order of said court in the premises.”.
The third section of the Civil Appropriation Act July 2, 1864 (13 Stat. L., 351), enacted that—
“In the courts of the United States there shall be no exclusion of any witness on account of color, nor, in civil actions, because he is a party to or interested in the issue tried.”
In an early and carefully considered case (Jones et al. v. The United States, 1 C. Cls. R., 383) it was held that the statutory right of the government to examine a claimant in this court, and use or withhold his testimony at its option, was not taken away by the act of July 2, 1864. Thereupon Congress, on the 2d March, 1867 (14 Stat. L., 457, § 2), extended the act of 1864 in express terms to this court.
This legislation remained but a short time in force. By the fourth section of the Act June 25, 1868 (15 Stat. L., 75), it was enacted:
“That no plaintiff or claimant, or any person from or through whom any such plaintiff or claimant derives his alleged title, claim, or right against the Urn ted States or any person interested in any such title, claim, or right, shall be a competent witness in the Court of Claims in supporting any such title, *4 claim, or right and no testimony given by such plaintiff, claimant, or person shall be used : Provided, That the United States shall, if they see cause, have the right to examine such plaintiff, claimant, or person as a witness under the regulations and with the privileges provided in section eight of the act passed March third, eighteen hundred and sixty-three.”
The practical effect of this statute was to take away the rights conferred upon claimants and parties interested by the act of 1867, and to restore to the government the rights which it had formerly enjoyed under the act of 1863, as to “a claimant or claimants,” “or any one or more of them” ; and also to extend those rights so as to embrace the privies in estate, and the parties interested, who are described in the fourth section of the act of 1868.
These provisions remained unchanged until the enactment of the Eevised Statutes. Section 1079 of the Eevised Statutes provides that—
“ No claimant nor any person from or through whom any such claimant derives his alleged title, claim, or right against the United States, nor any person interested in any such title, claim, or right, shall be a competent witness in the Court of Claims in supporting the same, and no testimony given by such claimant or person shall be used except as provided in the next section.”
This section, so far as it affects the rights of claimants and their privies in estate, and of persons interested in claims, to testify in support of their respective claims, leaves the previous provisions of law undisturbed. What it does until the rights of the government will be seen when we examine section 1080, which reads as follows:
“The court may, at the instance of the attorney or solicitor appearing in behalf of the United States, make an order iff any case pending therein, directing any claimant in such case to appear, upon reasonable notice, before any commissioner of the court, and be examined on oath touching any or all matters pertaining to said claim. Such examination shall be reduced to writing by the said commissioner, and be returned to and filed in tlie court, and may, at the discretion of the attorney or solicitor of the United States appearing in the case, be read and used as evidence on the trial thereof. And if any claimant, after such order is made, and due and reasonable notice thereof is given to him, fails-to appear, or refuses to testify or answer fully as to all matters within his knowledge material to the issue, the court may, in its discretion, order that the said cause shall not be brought forward for trial until he shall have fully complied with the order of the court in the premises.”
*5 This provision is identical in extent of power with the grant contained in the statute of 1803. We have frequently had occasion to consider this grant. Without referring in detail to previous cases, it is sufficient to say that the grant is twofold: 1st. To authorize a general examination of any claimant touching any or all matters pertaining to his claim; and, 2d. To take into consideration the results of such examination, irrespective of common-law rides of evidence, should they be offered in proof by the government.
These two grants of power are quite distinct and may be invoked by the government for quite different jrarposes.
The latter can be invoked only in the course of regular proceedings at the trial; and it is entirely discretionary with the counsel for the government whether they will invoke it or not. The examination of the claimant may be taken, but the Attorney-General is not obliged to use it at the trial unless he sees fit.
The former can be invoked only before trial; and then not only for the purpose of obtaining proof to be used at the trial, but also with the more general object of “discovery” of “any and all matters pertaining to the claim.” In this respect it is analogous to a bill of discovery in equity. Readiness to submit to such examination is a consequence of submission to the court’s jurisdiction, and may, in the court’s discretion, be made a condition precedent to the rendition of judgment. The government may, and doubtless sometimes will, enter upon the Inquiry, not only without an expectation of using at the trial the evidence which it may obtain, but with a settled purpose not to make such use. Be the government’s object what it may, the statute says that in every case in which this proceeding is allowed, the claimant shall appear and shall submit to an examination under oath or affirmation. No exception is made. If the government attempts to abuse the process, the court has, as we shall see, a discretionary power over it from its institution throughout, which it will undoubtedly exercise; just as a court of equity would exercise its discretion in the case of an application for a fishing bill of discovery. (Story’s Eq. Pl., § 325.)
The Revised Statutes are also identical with the act of 1863 as to the persons or parties against whom this power can be exercised. The act of 1863 authorizes the examination of “ the claimant or claimants,” “ or any one or more of them.” The Revised Statutes authorize the examination of “any claimant.” *6 The two expressions are identical and interchangeable; but they are not identical in terms with the provisions of the act of 1868, which the Revised Statutes replaced. The right of examination of privies in estate and of parties interested, which was conferred upon the government by the fourth section of the act of 1868, was not conferred in terms by § 10S0 of the Revised Statutes. In The United States v. Ciark (96 U. S., 37) both the judges who united in the opinion of the court and the judges who united in the dissenting opinion seemed to assume that the government enjoys, under the Revised Statutes, the same rights which it possessed under the act of1868. The question, however, received little or no examination above, as it was not material in that case. Until it shall be more carefully reviewed there, we prefer to adhere to the opinion expressed in Macauley's Case (11 C. Cls. R., 575), that “ The examination given by section 1080 cannot be extended to any other person than the claimant.”
Some qualification should be made, however, in the second proposition in Macauley’s Case, viz, that “ the government may call as a witness under section 1079 the assignor of a claim or a person interested in the event of the suit.”
Since the annunciation of the decision in Clark’s Case (96 U. S., 42), the. rights of both parties in this court as to evidence must stand on the common-law rules, except so far as the statute gives other rights to the government, or takes away rights from claimants.
The whole statutory provisions in force changing the common law are contained in sections 1079 and 1080 of the Revised Statutes. Section 1079 peremptorily excludes the testimony of privies in estate and of persons interested when offered in support of a claim. Even if the Attorney-General consents, the court cannot consider the evidence of such persons in support of a claim after the fact of the interest or of the privity is brought to its knowledge. The section then continues, “No testimony given by said claimant or person shall be used, except as provided in the next section; ” but the next section makes no provision for taking the testimony of any one but the claimant. It is therefore clear-that the evidence of a party interested, not a claimant, or of a privy in interest, cannot be taken under section 1080; and as section 1079 makes no provision for taking it or of allowing it to be used except in the manner in which evidence may be used when taken under the *7 provisions of section 1080, it follows that it can be taken for use by the government only under the restraints of the common-law rule. In so far as the language of the second proposition in Macauley’s Case goes beyond this, it must be regarded as qualified by the ruling in Clark’s Case.
In the present stage of the proceedings the defendants only ask us to exercise the first of the powers which we have enumerated. In each case we are asked to exercise it against a claimant. The defendants thus bring themselves strictly within the letter of the law.
It is not denied by the plaintiff that these proceedings are asked against claimants, or that the statute authorizes them to be taken against every claimant; but it is said (and the statement is supposed to be a full answer to the defendant’s request) that a corporation does not possess the physical power of speech or the mental power of thought, and therefore cannot respond to inquiries. Thus the sole question for our determination is, whether the claims of corporations, which already constitute a large and important class of the claims litigated here, are to be exempt from the scrutiny and discover to which the statute subjects the claims of every claimant who comes here; in other words, whether the statute which reads, “ The court may * make an order in any case pending therein, directing any claimant in such case to appear,” &c., is to be read hereafter, “ The court may * make an order in any case pending therein, directing any claimant in such case, except corporations, to appear,” &c.
We think such an interpolation would, in suits like the present, frustrate one of the purposes of the legislature. In granting the power to us, that body made no distinction between the claim of a corporation and that of an individual, and did not intend to exempt the one from the disco ver jr to which it subjected the other.
But it is not true in legal theory that a corporation can neither speak nor think. It can contract on matters within the scope of its powers. It can sue and respond to a suit. It can act on many matters quite outside of its corporate powers, matters which imply thought and design. It can commit assault and battery; it can be guilty of a nuisance; it can commit trespass; it can make a fraudulent representation; it can be guilty of a libel. The authorities on all these points are collected by Mr. Justice Campbell in the P., W. & B. R. R. Co. v. Quigley (21 How., *8 202), aud are quite conclusive. It may do even more than this; it may be guilty of treason, for in The United States, v. The Insurance Companies (22 Wall., 99), the Supreme Court say :
“ The captured and abandoned property act provides only for suits by persons who could have given aid and comfort to the rebellion. It is said corporations were incapable of giving such aid, and that they .cannot make proof that they have never given it. * * * The act of Congress confers the right to sue upon any person claiming to have been the owner of the captured or abandoned property. It makes no distinction between natural and artificial persons. * * * Such proof may be made as well by artificial as natural persons. Corporations-may have rendered very substantial aid to the armed resistance to the laws of the United States. They may have made loans- or contributions to the Confederate Government. They may even have fitted out companies or regiments of soldiers.”
If the law thus endows a corporation with faculties of intent and design, even on matters outside its corporate powers, it would seem a priori that there ought to be little difficulty in holding it capable of responding to inquiries such as are now propounded on matters within the scope of its corporate capacity ; especially if, by holding otherwise, the government may lose valuable rights intended to be conferred upon it by statute.
The theoiy upon which we are asked to reject these motions confounds the two distinct powers conferred upon us by statute, and herein lies its fallacy. It ignores the right of general discovery given to the government, and regards the claimant as under examination solely for the purpose of obtaining testimony for the trial.
The conclusions we reach are fortified by the general provision in the first section of the Eevised Statutes, that throughout that codification corporations are to be deemed to be included under the generic term “ persons.” They are also fortified by the general principle in equity that, although it is ordinarily a good objection to a bill of discovery that it seeks discovery from a defendant who is a mere witness and has no interest in the suit (Story Eq. Jur., § 1499), yet-, that in a bill of discovery against a corporation, which can only make discovery under its common seal and without liability for perjury, its officers and agents may be made parties to the bill and may be compelled to answer under oath, even though they are competent witnesses. (Ib., § 1501.)
It has been earnestly pressed upon us that the officers of *9 these respective corporations whose examinations the defendants are now seeking, are, for all that appears, competent witnesses in the suit, and that therefore the motion ought not to be granted. But Mr. Justice Story says that the contrary doctrine is now so well settled in equity respecting bills of discovery against a corporation, that it is, practically speaking, impossible to overturn it. (Ib.) A fortiori it should prevail, where the right to examine is given, not only by the analogies of the proceedings, but by the very words of the statute.
The exact point which is now presented has been decided in one of the courts of New York. The well-earned reputation of that court, and the high character and long judicial experience of the eminent justice who delivered the opinion, entitle the decision to great consideration.
The Code of Procedure of the State of New York provides that a party to an action may be examined as a witness, on commission, before trial, at the instance of the adverse party.
. The defendant was a corporation, and the case came up on appeal from an order at special term denying a motion for an order to examine the president of the defendant. Daly, F. J., in the opinion of the court, said:
“A discovery in aid of the prosecution or defense of an action would be ordered in equity against a corporation, and the officers, managers, or other persons connected with it who possessed and could give the information required would be compelled to discover it under oath. (Wyche v. Mead, 3 P. Wm., 311; Dummer v. The Corporation of Chippenham, 14 Ves., 245; Le Tezier v. The Margravine of Anspach, 15 id.; Milton Bank v. The Sharon Canal Co., 1 Paige, 219; Many v. The Beekman Iron Company, 9 id., 188.) Tlie plaintiff was therefore entitled to an order for the examination of the president of the corporation, as a corporation can make discovery only under the oath of its officers, or agents.”
Brady, J., added:
“ I agree to reverse upon the ground that a corporation is a party within the meaning of section 391 of the Code.”-(Carr v. The Gt. Western Ins. Co., 3 Daly, 160.)
Thus all considerations, whether founded on the language of' sections 1079 and 1080 of the Eevised Statutes, or on the purposes of the legislature in enacting them, or on other provisions- *10 of the Revised Statutes, or analogous proceedings at law and in •equity, or on direct authority from other courts, lead up to the •conclusion that we are empowered to authorize the proceedings prayed for by the Attorney-General against the claimants.
It is, however, entirely within the discretion of the court to grant or to refuse such a prayer. The statute says that the court “ may,” at the instance of the government, make such an ■order. The context shows that “ may ” is not to be construed in the sense of “shall”; for, in a subsequent part of the section, it is provided that—
“ If any claimant, after snch order is made, and due and reasonable notice thereof is given to him, fails to appear, or refuses to testify or answer fully as to all matters' within his knowledge material to the issue, the court may, in its discretion, order that the said cause shall not be brought forward for trial until he shall have-fully complied with the order of the court in the premises.”
It could not have been intended that the court should have no discretion to refuse the Attorney-General’s application to take testimony, but should, nevertheless, have power to refuse his application for postponement of the trial.
This view, derived from the consideration of the statute, is •strengthened by some decisions elsewhere on statutes, conferring on parties the right to testify. In the New York Case already cited the court say that the provision authorizing the ■examination of a party “ was designed' as a substitute for the bill for a discovery under oath in aid of the prosecution or defense of another action * * * and the examination there provided for is limited to cases where a discovery would have been previously ordered in equity.” (Carr v. Great Western Ins. Co., 3 Daly, 160.) In Missouri the court say that similar provisions there “ were probaba designed as a substitute for the ancient chancery practice.” (Eck v. Hatcher, 58 Mo., 239.) In England the statute of the 17th and 18th Victoria, ch. 125, gave to the ■courts the right to order parties, or, in the case of a body corporate a party to a cause) any of the officers of the corporation to testify in the case. It is now well settled that English courts •of law in administering this power are guided, though not fettered, by the rules and principles which courts of equity act upon with respect to bills of discovery. (Taylor on Ev., § 482, &c., cited in Wharton Ev., § 490, note 4.)
*11 Our rules contain no provisions as to the exercise of this discretion when the examination of a corporation is desired. The motion should proceed against the corporation claimant, and such officer or officers or agents as the Attorney-General may suggest for examination to speak for it, and it would seem to be just to afford to the claimant an opportunity to answer the suggestion, and to indicate reasons why this or that person should not be examined. The court has also the power subsequently to postpone the trial of the case, if the claimant unnecessarily postpones submitting the witnesses to examination. The exercise of this power is entirely within the discretion of the court, and would be exercised only in furtherance of the ends of justice.
It appears that the motion in the Santa Fé Eailroad Case as amended is in proper form, and that the persons indicated for examination are proper persons. The Attorney-General at the hearing of the motion made verbal statements which satisfied us that the subjects of the proposed examination are proper subjects of inquiry, and that the examination is not sought for a fishing purpose. The motion will, therefore, be granted.
In the Missouri Eailroad Case the claimants consent that the motion shall be granted; and it appearing that the motion as amended is in proper form, it will be granted.