## UNITED STATES *v.* CLARK.

1. When the Court of Claims sends here as part of its finding all the evidence on which a fact essential to the judgment there rendered was found, from which it appears that there was no legal evidence to establish such fact, this court must, on appeal, reverse the judgment.

2. At common law, a party to a suit is a competent witness to prove the contents of a trunk or package, which, by other testimony, is shown to have been lost or destroyed under circumstances that render some one liable for the loss.

3. Sect. 1079 of the Revised Statutes was intended to do no more than to restore in the Court of Claims the common-law rule excluding parties as witnesses, which had been abolished by the act of July 2, 1864, (13 Stat. 351); and hence the petitioner in this case is a competent witness to prove the contents of a package of government money taken from his official safe by robbers.

4. The petitioner being competent, neither his testimony before the court-martial which convicted the robbers, nor his report of the loss to his superior officer, is admissible as independent or original evidence, though it might be proper as corroborative of his own testimony.

5. The statute of limitation of suits in the Court of Claims (Rev. Stat., sect. 1069) is not applicable to a suit under sects. 1059–1062, because such a suit is brought to establish, not a claim in the just sense of that word, but a peculiar defence to a cause of action of the United States against the petitioner; and so long as the United States neglects to bring suit to establish that cause of action, so long must he be allowed to set up any defence thereto not in itself a separate demand.

6. The petitioner's right to sue in the Court of Claims did not accrue until the accounting officers held him liable for the sum lost, by refusing to credit his account therewith; and their final action was within six years before this suit was brought.

APPEAL from the Court of Claims.

This case was, on the appeal of the United States, before this court at the last term, and is reported in 94 U. S. 73, where the finding of the Court of Claims is stated.

The judgment below was then reversed, on account of an insufficient finding, and the cause remanded for further proceedings. Upon a subsequent trial, the Court of Claims made a further finding, and rendered judgment for Clark. The United States then brought the case here. As the additional finding is set forth in the opinion of this court, it is not necessary to insert it here.

*Mr. Assistant-Attorney-General Smith* for the United States.

*Mr. Thomas H. Talbot, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from the Court of Claims, and very few cases involving no larger sum of money have given us more trouble. It was before us at the last term, and is reported. 94 U. S. 73. Upon an examination of the record, after the case had been submitted to us, it was discovered that on an essential fact in issue the Court of Claims had made no finding, but had sent us the evidence on that point. The judgment was therefore reversed, on the ground that there was no sufficient finding of the facts on which to render a judgment, and the cause was remitted to that court for further proceedings.

The Court of Claims has now found, with sufficient distinctness, the existence of the fact required; but it still sends to us, with the record, the evidence on which it so found. It is this which produces the embarrassment, as we shall presently see.

The suit is brought by Clark, under the act of May 9, 1866 (14 Stat. 44, Rev. Stat., sects. 1059, 1062), which authorizes the Court of Claims to hear and determine the claim of any disbursing officer for relief from responsibility on account of capture or other loss of funds while in the line of his duty, and for which such officer was and is held responsible; and, in case the loss has been found to be without fault or negligence on the part of such officer, to make a decree setting forth the amount thereof, which shall be allowed as a credit by the accounting officers of the treasury in the settlement of his accounts.

The Court of Claims finds that the claimant lost by robbery, while in the line of his duty as assistant-paymaster in the army, at Franklin, Texas, on the sixth day of April, 1865, a package of government funds; that the package was in his official safe at his quarters, and the loss was without fault or neglect on his part. The fifth finding of the court, and the one which was made to supply the defect found in the case when it was here before, is as follows: "The package of government funds which the claimant lost by robbery, as above stated, contained the sum of $15,979.87."

If this were all, there would be no difficulty in holding that these findings sufficiently established all that is necessary to support the decree in favor of the claimant for a credit of that sum in his account with the government. But the Court of

Claims has mingled with, and made a part of its finding of facts, and sent here as part of the record, the proceedings of a court-martial which tried and convicted Thomas Boylan and Louis Morales of committing the robbery by which the money was lost. It sufficiently appears that the only evidence on which the Court of Claims made its fifth finding, namely, the amount of the money which was in the government package so lost, was the record of the court-martial, and that claimant there testified to the amount of the loss. Also, that he was of good character, personally and officially; had always kept regular and exact accounts of the funds in his official custody; made due returns in regard to them, and properly accounted therefor. And that he immediately reported to his superior officer that the funds in that safe were $15,979.87, which was the amount of the loss appearing in his official reports, and charged against him as a deficiency on the final revision and settlement of his accounts by the accounting officers of the treasury.

It is clear that upon this testimony alone the Court of Claims fixed the sum lost by claimant. We are asked by the counsel for the government to hold that it is not competent evidence to establish that fact.

It is manifest that, before we can do this, we must also hold that where that court has found in due form, and presented to us one of those ultimate facts which it is required to find, and which is necessary to its judgment, and has at the same time presented as part of its finding all the evidence on which that fact was found, we can look at both findings to see whether that evidence was competent proof of that fact. This is precisely what was done in *Moore* v. *United States*, 91 U. S. 270.

Counsel for the United States insist that a party in the Court of Claims has a right to bring before this court for review any and every ruling of the Court of Claims upon the admission or the rejection of evidence, and also its weight and effect upon the case. The question thus presented is one of much perplexity, and involves the right to a bill of exceptions in a court which sits without a jury, where the evidence is all in writing, and whose judgments we have, by our rules, sought to make final as to all the facts in the case.

We do not propose here to enter this field of inquiry further

than this case requires. And we think it does require us not to weigh the evidence, nor to decide whether the court below was bound to note the exception prayed by counsel, or even to include in their findings the matters of evidence we have above stated. But we are of opinion that when that court has presented, as part of their findings, what they show to be all the testimony on which they base one of the essential, ultimate facts, which they have also found, and on which their judgment rests, we must, if that testimony is not competent evidence of that fact, reverse the judgment for that reason. For here is, in the very findings of the court, made to support its judgment, the evidence that in law that judgment is wrong. And this not on the weight or balance of testimony, nor on any partial view of whether a particular piece of testimony is admissible, but whether, upon the whole of the testimony as presented by the court itself, there is any evidence to support its verdict; that is, its finding of the ultimate fact in question.

Entering upon the inquiry, whether there is here any evidence on which the court could have found the amount of the loss by the robbery, it seems too plain for argument that the record of the court-martial is wholly incompetent.

1. Clark was no party to that proceeding, and is not, therefore, bound by its findings; and, by a well-known rule, there is no mutuality, and, therefore, it cannot bind the United States. 2. The amount of the robbery was in no way an essential issue in the trial of the robbers. 3. And it may well be doubted whether a criminal proceeding in a military court can be used to establish any collateral fact in a civil proceeding in another court.

Nor can the evidence of a witness in that case be competent to establish a fact in another case, without some reason, such as his death or insanity since it was given. We will recur to this point presently.

Was the good character of the claimant, the regularity of his accounts, and the prompt report of the loss and its amount, competent evidence to establish that amount? The only thing in all this which could have any tendency to prove the sum lost is the report of its loss. This is but the testimony of the party claimant, and testimony not under oath. If he is incom

petent as a witness, this less direct mode of testifying must also be excluded. If he is competent, and had been introduced on the stand, this fact might be used as corroborative evidence. But while he is alive and competent, it must be excluded as primary or independent evidence; because there is better evidence in the sworn statement of the party himself, produced on the stand and subject to cross-examination.

It is obvious, however, that the court or the counsel were laboring under the conviction that claimant was not a competent witness, and were struggling to find other evidence of a fact which was known to him alone. In this we think they were mistaken, and that for the purpose of proving the contents of the stolen package, and for that purpose alone, he was competent.

We are of opinion that, by the rules of evidence derived from the common law, as it is understood in the United States, whenever it becomes important to ascertain the contents of a box, trunk, or package which has been lost or destroyed, under circumstances that make some one liable in a court of justice for the loss, and the loss and the liability are established by other testimony, the owner or party interested in the loss, though he may be a party to the suit, is a competent witness to prove the contents so lost or destroyed. 1 Greenl. Evid. §§ 348–350, and notes.

This is one of those exceptions to the rigorous rule of the common law excluding parties and persons having an interest in the result of the suit from becoming witnesses in their own behalf, which has been engrafted upon that system. It is founded in the necessity of permitting the only party who knows the matter to be proved to testify, in order to prevent an absolute failure of justice, where his right to relief has been established by other evidence. We are aware that there is a conflict of authority on this point, but we believe the preponderance is in favor of the proposition we have stated; and looking at it as a matter of principle, in the light of the progress of legislation and judicial decision, in the direction of more liberal rules of evidence, we have no hesitation in adopting it, in the absence of legislation by Congress on the subject.

But there is legislation by Congress, and it is doubtless to be attributed to this that Mr. Clark was not called to prove the contents of the lost package. Sect. 858 of the Revised Statutes,

originally enacted July 2, 1864, declares that " in the courts of the United States no witness shall be excluded in any action on account of color, or in any civil action because he is a party to or interested in the issue tried." This was a complete abolition of the rule of exclusion under the common law in all the courts of the United States, and under it the claimant would have been competent to prove not only the contents of a lost package, but every other fact necessary to establish his claim or title to the relief sought by the suit. Four years later, however, Congress became dissatisfied with this departure from the old rule of evidence as it applied to suits in the Court of Claims, and by the act of June 25, 1868 (Rev. Stat., sect. 1079.), intended to restore it. It is there enacted that " no claimant, nor any person from or through whom any such claimant derives his title, claim, or right against the United States, nor any person interested in any such title, claim, or right, shall be a competent witness in the Court of Claims in supporting the same ; and no testimony given by such claimant or person shall be used, except as provided in the next section." The next section provides for the examination of such parties at the instance of the government counsel.

It can hardly be supposed that Congress intended to do more in this last statute than to restore the common-law rule of exclusion as it stood before the passage of the act of 1864. There is nothing in the language of the act of 1868, nor in the purpose to be subserved, which required more ; and in this respect the later act was limited to the Court of Claims, leaving the more progressive rule of 1864 to its full operation in all other courts. The peculiar form of expression of the act of 1868, so far from militating against this view, rather tends to confirm it. The parties are excluded from being witnesses in support of the title, claim, or right asserted in the suit, and no testimony given by them, — that is, no testimony given elsewhere on those points, — shall be used. But it is not inconsistent with this view, that, if the title or right of the claimant to relief is established by other evidence, he may be competent to prove, as under the common-law rule, the contents of the package in regard to which his right, title, and claim to relief has already been established. We are of opinion, therefore, that for this purpose the claimant

was a competent witness, and that his testimony was the best to be had, since the court finds that he kept no clerk or assistant who might know the necessary facts.

It follows, that, since there was no competent evidence before the Court of Claims, as shown by their own finding, of the contents or amount of the lost package, their finding on that subject was erroneous, and the case must be returned for a new trial. But as all the other facts necessary to a judgment have been found, and are without error in the finding, the new trial or hearing will be limited to the question of the contents of the lost package.

As the case has now been twice before us, and as counsel for the United States has insisted on a plea of the Statute of Limitations, we must dispose of that now.

"Every claim against the United States, cognizable in the Court of Claims, shall be for ever barred, unless the petition is filed .... within six years after the claim first accrues." Rev. Stat., sect. 1069. The petition of plaintiff in this suit does not, in the just sense of the word, set forth a claim against the United States. It sets up a defence to a claim of the United States against the plaintiff. The Court of Claims finds that plaintiff is now sued in another court by the United States for the sum in controversy here.

The plaintiff asks, and by the very terms of the statute under which the Court of Claims acts can obtain, no judgment for money against the United States, nor fix any liability on the government to pay him any thing. By a very curious provision, the Court of Claims is authorized to establish for him a defence to a claim, which claim the government can only establish judicially in some other court. If that court could entertain jurisdiction of this matter when offered as a defence, it is very clear that the Statute of Limitations would be no bar to such defence there. Why should it be here? We think it is a principle of general application, that so long as a party who has a cause of action delays to enforce it in a legal tribunal, so long will any legal defence to that action be protected from the bar of the lapse of time, provided it is not a cross-demand in the nature of an independent cause of action. But if we are mistaken in this, it is clear that, until the accounting officers of

the treasury had refused to recognize the sum lost·as a valid credit in the settlement of his accounts, there was no occasion to apply to the Court of Claims ; and the.statute, if applicable to this· class of cases at all, did not begin to run until then. In the language. of the statute, the officer is not held responsible for this amount until the accounting officers reject it as a credit, and it is only when he has ·been or is so held that he is authorized to sue in the Court of Claims to establish his defence.

*Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.*

MR. JUSTICE HARLAN, with whom concurred MR. JUSTICE CLIFFORD, MR. JUSTICE SWAYNE, and MR. JUSTICE STRONG, dissenting.

I concur in the reversal of the judgment in this case, because there was no competent evidence before the Court of Claims of the amount of public moneys taken from Clark by this alleged ·robbery. But I feel obliged to express my dissent from some of the conclusions announced in the opinion of the majority of my brethren.

The proviso to the third section of the Civil Appropriation Act of July 2, 1864, declares, that "in the courts of the United · States there shall be no exclusion of any witness on account of color, nor in civil actions because he is a party to or interested in the issue tried." 13 Stat. 351. Prior to its passage, the courts of the United States adhered, with great strictness, to the common-law rule that a party to the record cannot be a witness, either for himself or a co-suitor in the cause. *Bridges et al.* v. *Armour et al.,* 5 How. 91 ; *Stein* v. *Bowman et al.,* 13 Pet. 209.

Broad as was its language, that proviso was regarded as applying only to the courts of the United States referred to in the judiciary act. Congress, however, by sect. 3 of the general appropriation act of March 2, 1867 (14 Stat. 451), directed that it should " be construed to embrace all suits to which the United States shall be a party in the Court of Claims, either as plaintiff or defendant," thus rendering a party to an· action in that court a competent witness against the United States, without reference to his interest in the issue.

That section remained in force but a short while; long enough, however, as we may infer from a subsequent enactment, to convince the legislative department that it was against public policy to allow suitors in the Court of Claims to testify in their own behalf against the government. Hence, by an act providing for appeals from that court, and for other purposes, approved June 25, 1868 (15 id. 75), it was declared, —

" That no plaintiff, claimant, or any person, from or through whom any such plaintiff or claimant derives his alleged title, claim, or right against the United States, or any person interested in any such title, claim, or right, shall be a competent witness in the Court of Claims in supporting any such title, claim, or right, and no testimony given by such plaintiff, claimant, or person shall be used: *Provided*, that the United States shall, if they see cause, have the right to examine such plaintiff, claimant, or person as a witness, under the regulations and with the privileges provided in sect. 8 of the act of March 3, 1863, entitled 'An Act to amend an act to establish a court for the investigation of claims against the United States; approved Feb. 24, 1855.' "

The privilege here referred to was that accorded to the government to require the claimant, upon the order of the court, to submit to an examination, under oath or affirmation, as to any and all matters pertaining to his claim, such examination not to become evidence in the cause except at the discretion of the United States.  12 Stat. 766.

The provisions of the acts of July 2, 1864, and June 25, 1868, so far as they relate to the competency of witnesses, were re-enacted in the Revised Statutes.  Sects. 858, 1079, 1080.

An act, approved May 9, 1866 (14 Stat. 44), confers jurisdiction upon the Court of Claims " to hear and determine the claim of any paymaster, quartermaster, commissary of subsistence, or other disbursing officer of the United States, . . . for relief from responsibility on account of losses by capture or otherwise, while in the line of his duty, of government funds, . . . and for which such officer was and is held responsible: *Provided*, that an appeal may be taken to the Supreme Court, as in other cases."

Sect. 2 provides " that whenever that court shall have ascertained the facts of any loss to have been without fault or neglect

on the part of such officer, it shall make a decree setting forth the amount thereof, upon which the proper accounting officers of the treasury shall allow to such officer the amount so decreed as a credit in the settlement of his accounts."

Under the authority of this statute Clark instituted this action against the United States, asserting that, in the year 1865, while in the line of his duty as paymaster, in the State of Texas, he had, without fault or neglect on his part, been robbed of government funds in the sum of $15,979.87, and praying that a decree be rendered relieving him from responsibility therefor.

The fact of a loss, without the fault or neglect of Clark, having been shown by other witnesses, this court holds that he is a competent witness, in his own behalf, to prove the extent of such loss. He is thus allowed to establish, by his own testimony, one of the essential facts upon which any decree in his favor must rest; viz., the amount for which he should receive credit in the settlement of his accounts.

In that view I cannot concur. I think it cannot be sustained upon principle or authority. The will of Congress as to the conditions upon which it allows the citizen to sue the government has been expressed in plain and unambiguous language, which leaves no room for construction. It is obviously our duty to execute the statute without reference to our opinion as to its wisdom or policy. If, under the circumstances of particular cases, it seems harsh when construed according to its terms, the remedy is with another department of the government, and not with the judiciary. The act which furnishes the sole authority for the institution of this action describes the demand of a disbursing officer to be relieved from responsibility for government funds which have been lost, as a "claim" which the Court of Claims may hear and determine. Congress not only expressly provides that no plaintiff or claimant in that court shall be a competent witness in supporting any claim or right he may assert against the United States; but, as if *ex industria* to prevent all misapprehension, and remove all possible doubt as to its intention, declares that "no testimony given by such plaintiff, claimant, or person shall be used." Nevertheless, this court holds that Clark may testify as to the extent of the credit he is entitled to receive, and that his testimony

upon that point may be used against the United States. If at the time of framing the act of June 25, 1868, the draughtsman intended to employ such terms as should effectually and in every conceivable contingency exclude the testimony of claimants when offered in their own behalf in the Court of Claims, he could, in my opinion, have used no more appropriate language. It is so simple and clear, that it would seem impossible for the utmost ingenuity to suggest a mode of defeating what appears to have been the evident purpose of Congress. A "claimant" or a "plaintiff" in the Court of Claims is incompetent as a witness against the United States. Is not Clark a "plaintiff," and does he not in this suit set up a claim or right? If allowed to be a witness to prove the amount of his loss, will he not give testimony in support of a "right" to be credited therewith? Is not the act explicit and imperative that no "plaintiff" shall be heard to support his claim or right in that court by his own testimony, and that his testimony shall not be used against the government? It seems to me that these questions must be answered in the affirmative. Under what rule, then, can Clark be a competent witness in his own behalf? How can his testimony be received against the government, without utterly disregarding the plainly expressed will of that department, which has the power to declare the conditions upon which the United States may be sued by the citizen?

With entire respect for the opinion of my brethren, I submit that the construction which the court places upon the act of June 25, 1868, seems to fall very little short of judicial legislation.

It is said that the utmost which can be claimed for the act is that it prescribes the general common-law rule, that a party cannot testify in his own behalf, and that this case comes within one of the recognized exceptions to that rule. In support of that position, we are referred to sects. 348–350 of 1st Greenleaf's Evidence. But neither they nor the authorities cited in the notes prove what is claimed for them. That eminent text-writer says that "the oath *in litem* is admitted in two classes of cases: first, when it has been already proved that the party against whom it is offered has been guilty of some *fraud or other tortious and unwarrantable act*

*of intermeddling* with the complainant's goods, and no other evidence can be had of the amount of damage; and, secondly, where, on general grounds of policy, it is deemed essential to the purposes of justice." An example of the first class is the case cited in *East India Company* v. *Evans et al.*, 1 Vern. 306, where a man ran away with a casket of jewels. The injured party was allowed to testify *in odium spoliatoris.* Another case, of the same class, is *Herman* v. *Drinkwater*, 1 Me. 27, where the plaintiff shipped a trunk and two boxes on a brig then in the port of London, of which the defendant was master. The latter undertook to transport them to New York. The plaintiff, desiring to accompany them, engaged passage for himself in the same vessel, and sent on board his clothes and other baggage necessary for his accommodation. The defendant sailed without him, and on the voyage to New York broke open the trunk and rifled it of its contents. The plaintiff, in an action against the master, was held to be a competent witness, in his own behalf, to prove the contents of the trunk. It will not be pretended that the case now before us is within the first class just stated. The United States was not guilty of any fraud or tortious act whereby Clark lost the funds intrusted to him.

Nor can this case, consistently with the authorities, be embraced in the second class, familiar examples of which are actions against innkeepers, stable-keepers, and common carriers. Such actions always proceed upon the theory that the defendant was guilty of some fraud or negligence or breach of trust, whereby the plaintiff lost his property. Upon grounds of public policy the latter was sometimes allowed, at common law, to prove by his own oath certain facts essential to a recovery, no other evidence being attainable. To this head may be referred, says Mr. Greenleaf, the admission of the party robbed, as a witness for himself, in an action against the hundred, upon the Statute of Winton. But that action was authorized upon the ground that the hundred was guilty of some wrong or negligence whereby the plaintiff had received the injury complained of. Nothing of that kind can be predicated of the government in a case like this. No element of wrong or fraud or negligence on its part can exist in any action

instituted under the act of May 9, 1866. Paymaster Clark was intrusted with public funds for disbursement, and their loss was not caused by the neglect of any other government officer. By the law then in force, he was responsible for them, although they had been feloniously taken from him. *United States* v. *Prescott et al.*, 3 How. 578. Congress, in 1866, influenced doubtless by the hardship of special cases, perhaps of this particular case, enabled disbursing officers to obtain a credit for government funds taken from them, without fault or negligence on their part. A subsequent statute, however, declares that no testimony given by a plaintiff in the Court of Claims against the United States shall be used. Whatever exceptions to the common-law rule public policy or necessity has established, the terms of the act of June 25, 1868, exclude all possibility of exceptions to the rule which it prescribes. In the Court of Claims no plaintiff can testify against the United States in support of his claim or right. So reads the statute; and it is, I submit, the duty of this court to obey it, leaving to Congress to make such changes in the rules of evidence as its views of public policy may suggest. It may be unfortunate for Clark if he be denied an opportunity to testify to the amount of his loss; but, as said by Lord Campbell, "it is the duty of all courts of justice to take care, for the general good of the community, that hard cases do not make bad law." *East India Company* v. *Paul*, 7 Moo. P. C. C. 111.

I dissent also from that portion of the opinion which overrules the plea of limitation interposed by the government.

The act of March 3, 1863 (12 Stat. 765, re-enacted in Rev. Stat., sect. 1069), declares that "every claim against the United States, cognizable by the Court of Claims, shall be for ever barred, unless the petition setting forth the statement of the claim be filed . . . within six years after the claim first accrues."

Immediately upon the passage of the act of May 9, 1866, Clark had the right to proceed in that court, but he did not file his petition until April 12, 1873. " In general, it may be said that it is a rule in courts of equity as well as in courts of law, that the cause of action or suit arises when and as' soon as the party has a right to apply to the proper tribunals

for relief." Angell, Lim. 37, c. 6, sect. 42; 2 Story, Eq. Jur., sect. 1521 *a*.

This court holds that Clark's suit was not the assertion of a "claim," within the meaning of the limitation clause of the act of 1863. From that construction I dissent.

Clark resorted to the Court of Claims under the authority of an act which, as already suggested, entitles the demand for relief under its provisions as a "claim," and in his affidavit to the petition he speaks of his demand as a "claim," and of himself as a "claimant." The Revised Statutes, following that act, designate such a demand as a "claim," and give the Court of Claims jurisdiction of "all claims founded upon any act of Congress." In every just sense, this claim is so founded.

Clark, in order to obtain relief from responsibility for the funds in question, was required to present to the proper accounting officers a decree of the Court of Claims directing that he should receive credit for the amount taken from him by the alleged robbery. It was not, therefore, a misuse of words for Congress to describe a demand for relief under the act of 1866 as a "claim." If a "claim," it was clearly barred, unless it did not accrue until the credit which Clark had given himself in his report was rejected at the treasury in 1871; but, unquestionably, his crediting himself with the amount taken from him by the robbery was an unauthorized act. The accounting officers could not, except in pursuance of a decree of the Court of Claims, lawfully admit such a credit; and their failure to promptly disallow it did not give him any additional right, nor deprive the government of any right which it possessed. Neither his nor their action could suspend the running of the Statute of Limitations. His claim, therefore, accrued immediately upon the passage of the act of May 9, 1866. Not having been asserted by suit within six years from that date, it was barred.

I am of opinion that the judgment should be reversed, with directions to dismiss the petition.