**Desiree WHITESIDE, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**Civ. No. 5–91–78.**

United States District Court,
D. Minnesota,
Fifth Division.

June 25, 1992.

---

**1382**

Thomas F. Andrew, Duluth, Minn., for plaintiff.

William J. Toppeta, Amy K. Posner, of counsel, New York City, and Joseph J. Mihalek, Fryberger, Buchanan, Smith & Frederick, Duluth, Minn., for defendant.

### ORDER

ERICKSON, United States Magistrate Judge.

#### I. *Introduction*

The above-titled matter came before the undersigned United States Magistrate Judge pursuant to the consent of the parties that the entirety of the action, including any trial of the issues, be conducted by the Magistrate Judge in accordance with the provisions of Title 28 U.S.C. § 636(c)(1).

Following the close of discovery, the parties filed Cross–Motions for Summary Judgment, and those Motions are presently before the Court for decision. Arguments of counsel were heard at a Hearing held on April 23, 1992,[1] at which the Plaintiff appeared by Thomas F. Andrew, and the Defendant appeared by Amy K. Posner.

As more fully detailed hereinafter, the Court finds that there are no genuine issues of material fact and that the Defendant is entitled to Judgment as a matter of law.

#### II. *Factual and Procedural Background*

This is an action arising under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), Title 29 U.S.C. §§ 1001 *et seq.*,[2] as a result of the Defendant Metropolitan Life Insurance Company's ("MetLife's") denial of group life insurance benefits to the Plaintiff, Desiree Whiteside. The Plaintiff is the widow and the named beneficiary, under the group life insurance policy here in question, of Roger Whiteside. *Stipulation of Facts*, at ¶ 15.[3] Mr. Whiteside had been employed as an electrical lineman by the Arrowhead Electric Cooperative, Inc. ("Cooperative"), until his accidental, work-related death on October 1, 1990. *Stipulation of Facts*, at ¶ 12. The sole basis for MetLife's denial of the claimed benefits was that Mr. Whiteside had not completed one month of continuous full-time employment with the Cooperative at the time of his death, and would not have completed that period of employment until October 4, 1990. As such, MetLife concluded that Mr. Whiteside was not a covered employee under the terms of the policy.

The policy in question was incident to an employee benefit program sponsored by an association of electric cooperatives known as the National Rural Electric Cooperative

1. At oral argument, the Court requested that the parties furnish the Court with any pertinent collective bargaining agreement. The applicable agreement has been filed with the Court and is a part of the record upon which the Court has based its decision.

2. Although the Plaintiff's Complaint purports to raise a state law cause of action in the nature of a breach of contract, at oral argument counsel for the Plaintiff acknowledged that any purported state law action was preempted by ERISA. ERISA's preemption of the state law claim, which was asserted in the Plaintiff's Complaint, cannot be seriously doubted. Title 29 U.S.C. § 1144(a) provides in pertinent part:

> [T]his chapter shall supersede any and all laws insofar as they may now or hereafter relate to any employee benefit plan.

In turn, ERISA defines the term "State law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." *Title 29 U.S.C. § 1144(c)(1)*. By virtue of the inclusiveness of these statutory definitions, the United States Supreme Court

has concluded that ERISA preempts all state common law claims which relate to employee benefit plans. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Consequently, were the Court to reach the alternative Motion filed by the Defendant, namely, that the Plaintiff's demand for a jury trial be stricken, the Court would grant the motion. *Kirk v. Provident Life and Accident Insurance Company*, 942 F.2d 504, 506 (8th Cir. 1991); *In re Vorpahl*, 695 F.2d 318, 322 (8th Cir.1982).

3. The parties executed a "Stipulation of Facts" which admits to the truth of the facts so stipulated, subject to objection on the grounds of irrelevancy or immateriality. No objections were filed with the Court as to any of the stipulated facts and, for ease of reference, the pertinent paragraph of the Stipulation of Facts will be cited, where appropriate.

Association ("NRECA"). As a member of that Association, the Cooperative subscribed to an employee welfare benefit plan that NRECA administered and that was referred to as the National Rural Electric Cooperative Group Benefits ("NRECGB") Trust. In order to fund the life insurance portion of its employee benefit plan, the NRECGB Trust purchased a group term life insurance policy from MetLife. The NRECGB Trust and its component benefit plans are regulated and governed by ERISA. *Stipulation of Facts*, at ¶ 3.

As here pertinent, the Summary Plan Description and the related employee benefit plan documents address employee eligibility in the following terms:

### WHEN YOU BECOME COVERED

When you are hired as a full-time Employee, you may enroll yourself * * *. If you enroll, your coverage will begin when you complete the employment waiting period shown in the Schedule of Benefits.

*Stipulation of Facts*, at ¶ 6.

\* \* \* \* \* \*

### ELIGIBLE EMPLOYEES

All full-time Employees of Arrowhead Electric Cooperative, Inc.

### EMPLOYEE WAITING PERIOD

Coverage begins after one month of continuous full-time employment.

*Id.*

The plan documents define "employee" as meaning "a person who is employed and paid for services by [the Cooperative] on a full-time basis," [4] and a "full-time employee" is defined as an "employee who has worked, or who it is anticipated will have worked, at least 1,000 hours during his first 12 months of employment" with the Cooperative.[5] The "waiting period" is the "length of time an employee must wait

before he or she is eligible for benefits," and the plan documents reflect that the Cooperative was permitted to elect one of five different "waiting periods," extending from "no waiting period" to "6 months of employment." *Stipulation of Facts*, at ¶ 6; and see, Exhibit C to the *Stipulation of Facts*, at page 3. Notably, the plan documents also required that, to be eligible, the employee had to be "actively working":

You must be actively at work as an Employee in order for your Personal Benefits to become effective. If you are not actively at work as an Employee on the date when your Personal Benefits would otherwise become effective, your Personal Benefits will become effective on the date of your return to active work as an Employee.

*Stipulation of Facts*, at ¶ 5 and ¶ 6.

In addition to defining pertinent terminology, the plan documents also furnish illustrative examples of how the waiting periods are to be administered. While not entirely on point, since the example assumes a three month waiting period, the following example is instructive:

B. For NON–CONTRIBUTORY COVERAGES, the employee becomes insured automatically on the date he becomes eligible, provided that he is actively at work. This applies whether or not the Enrollment for Participation in Retirement and Insurance Program form has been completed.

Example # 1

Conditions:

—Date of hire—March 3, 1990

—System waiting period—3 months

—No prior service

—Enrollment form signed on March 3, 1990

—Contributory coverage

---

**4.** *Stipulation of Facts*, at ¶ 5. Elsewhere, the plan documents define an "employee" as a "person who is: 1. actively working for the Employer; and 2. receiving earnings." *Stipulation of Facts*, at ¶ 6.

**5.** See, Exhibit C to the *Stipulation of Facts*, at page 3. According to this provision, any employee who has worked or who will work more than 83 hours per month is a "full-time employee."

Conclusion:

Coverage is effective on June 3, 1990. Since the enrollment form was completed before the end of the waiting period, coverage becomes effective upon completion of the waiting period.

*Stipulation of Facts,* at ¶ 8.

By an application filed on July 12, 1990, Mr. Whiteside sought employment as a lineman with the Cooperative and advised that he would be available for work "2 weeks after notice." *Stipulation of Facts,* at ¶ 9. In response to his application, on August 14, 1990, the Cooperative, in a letter signed by its Manager, accepted Mr. Whiteside's application and offered him a position as a "3rd year apprentice" with a starting date of September 5, 1990. *Id.* Mr. Whiteside's actual starting date was September 4, at which time Mr. Whiteside completed his Employment Eligibility Verification, his Withholding Allowance (W–4) Certificate and his Enrollment for Participation in Retirement and Insurance forms. Thereafter, Mr. Whiteside worked each regular week day in the month of Septem-

ber, except for September 3, which was Labor Day,[6] and, on two occasions in the month of September, Mr. Whiteside worked overtime. As noted, on October 1, 1990, while in the course and scope of his employment with the Cooperative, Mr. Whiteside was accidently electrocuted.

The Plaintiff or her counsel filed claim applications with the appropriate representatives of MetLife on two separate occasions, and those applications having been denied, the Plaintiff commenced this action.

A single issue is raised for the Court's determination.[7]

## DECISION

*Did the Defendant Violate the Provisions of ERISA, Title 29 U.S.C. §§ 1001 et seq., in Denying Group Life Insurance Benefits to the Plaintiff?*

A. *Standard of Review.* In actions such as this one, in which the Plaintiff challenges the denial of ERISA benefits pursuant to the provisions of Title 29 U.S.C. § 1132(a)(1)(B), the threshold issue

---

**6.** Under the terms and conditions of the applicable collective bargaining agreement, no construction work was to be performed on Labor Day, "except to preserve life and property." The same agreement provided that Labor Day was a recognized holiday which would be observed with full pay.

**7.** A subsidiary issue, which involves the propriety of an award of Summary Judgment under the circumstances of this case, may be briefly addressed.

On a Motion for Summary Judgment, all evidence and inferences from that evidence are to be taken in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-moving party, however, may not rest upon the allegations in the pleadings, but must present the Court with specific facts sufficient to raise a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A fact issue is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* supra 477 U.S. at 248, 106 S.Ct. at 2510. Applying these standards, the Court has not identified, nor have the parties directed the Court to any genuine issue of material fact which would preclude the entry of Summary Judgment.

Rule 56(c), Federal Rules of Civil Procedure, requires that Summary Judgment "shall be ren-

dered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has held that the standard under Rule 56(c) mirrors the standard for the entry of a directed verdict pursuant to the provisions of Rule 50(a), Federal Rules of Civil Procedure; namely, that the Court must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Id.,* at 250, 106 S.Ct. at 2511. Stated conversely, Summary Judgment will not lie if the evidence were sufficient to permit a Jury to return a verdict for the non-moving party. *Id.,* at 248, 106 S.Ct. at 2510. Moreover, if the Plaintiff cannot support each essential element of her claim, Summary Judgment must be granted to the Defendant as a complete failure of proof regarding an essential element of the Plaintiff's claim necessarily renders all other fact issues immaterial. *Celotex Corp. v. Catrett,* supra 477 U.S. at 322–23, 106 S.Ct. at 2551.

In applying these standards, the Court has concluded that, as a matter of law, Summary Judgment must be entered in favor of the Defendant. The Court has concluded that the Plaintiff has failed in her proof that MetLife violated any procedural or substantive requirement of ERISA, or that MetLife's denial of her group life insurance claim was unreasonable.

involves the legal standard that the Court should apply in reviewing the decision of the fiduciary or the plan administrator. *Lakey v. Remington Arms Co., Inc.,* 874 F.2d 541, 544 (8th Cir.1989). Here, the parties are in agreement that the "arbitrary and capricious" standard should apply and, in the Court's view, the pertinent language of the plan documents does not reasonably permit a different conclusion.

In *Firestone Tire & Rubber Company v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989), the United States Supreme Court laid to rest any prior uncertainty as to the appropriate standard of review in cases such as this one. There the Court held:

> Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Because we do not rest our decision on the concern for impartiality that guided the Court of Appeals, * * * we need not distinguish between types of plans or focus on the motivations of plan administrators and fiduciaries. Thus, for purposes of actions under § 1132(a)(1)(B), the de novo standard of review applies regardless of whether the plan is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be

weighed as a facto[r] in determining whether there is an abuse of discretion.

The plan documents reveal that, for purposes of adjudicating a claim for life or accident benefits, the insurance company that issued the policy, under which the claim is made, is the named fiduciary as provided in Title 29 U.S.C. § 1102(a) with respect to the claim adjudication for those benefits. *Stipulation of Facts,* at ¶ 7.[8] The plan documents go on to grant broad discretion to the NRECA Retirement, Safety and Insurance Committee and its delegates in the following terms:

> In discharging the duties assigned to them under the Plans, the Committee, the Plan Administrator and CBA [i.e., Cooperative Benefit Administrators, Inc.] and their delegates have the discretion and final authority to interpret and construe the terms of the Plans; to determine coverage and eligibility for benefits under the Plans; to adopt, amend, and rescind rules, regulations and procedures pertaining to their duties under the Plans, and the administration of the Plans; and to make all other determinations deemed necessary or advisable for the discharge of their duties or the administration of the Plans. The discretionary authority of the Committee, the Plan Administrator and CBA and their delegates is final, absolute, conclusive and exclusive, and binds all parties so long as exercised in good faith. NRECA, as sponsor of the Plans, specifically intends that judicial review of any decision of the the [sic] Committee, the Plan Administrator or CBA and their delegates be limited to the arbitrary and capricious standard of review. * * *.[9]

---

**8.** The plan documents reflect that the NRECA Retirement, Safety and Insurance Committee and the affected insurance company can, by written agreement, modify the insurance company's fiduciary role but, at oral argument, counsel for the Defendant advised that no such written agreement was known to exist, nor has the Plaintiff shown that any limitation has been placed upon the Committee's broad delegation of fiduciary responsibilities to the life and accident insurance companies involved.

**9.** The Court notes that, while CBA is expressly listed in this provision which grants discretion-

ary authority, the life and accident insurance companies are not. CBA is designated as the adjudicator for all claims for benefits under the Plans except for life and accident claims. Although the Plaintiff does not make the argument, the assertion could be raised that the failure to expressly identify and include the life and accident insurers in this provision, as CBA was included, was an intended exclusion under the maxim that "the expression of one thing is the exclusion of all others." The Court has considered that argument and has rejected its application here. Unlike CBA, the Committee has selected different insurers for life and acci-

Although agreeing that the arbitrary and capricious standard of review is applicable to the issue before the Court, the Plaintiff argues that a less deferential application of that standard is appropriate as:

1. The Court should apply the rule of construction in the State of Minnesota that requires any ambiguities in the provisions of insurance contracts to be resolved in favor of the insured; and,

2. The Court should recognize that, since MetLife would be required to pay the Plaintiff from its own assets rather than from the assets of a trust, the fiduciary role of MetLife lies in perpetual conflict with its profit-making role as a business, thereby rendering any highly deferential standard of review inappropriate.

The Court finds that neither of these arguments is entirely compelling under the circumstances of this case, although each requires brief comment.

■ As to the first assertion, the Court would only note that the rule of this Circuit is that the "contra insurer rule," which requires that an ambiguity in the language of an insurance contract be construed against the interests of the insurer, has been found to violate the provisions of ERISA and, therefore, is preempted by that Statute. *Finley v. Special Agents Mutual Benefit Association, Inc.*, 957 F.2d 617, 619 (8th Cir.1992); *Brewer v. Lincoln National Life Insurance Co.*, 921 F.2d 150, 153–54 (8th Cir.1990), cert. denied, — U.S. —, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991); *Garred v. General American Life Insurance Co.*, 774 F.Supp. 1190, 1197 (W.D.Ark.1991). Until such time as this decisional law is expressly or impliedly overruled, it is binding upon this Court.

■ The second argument advanced by the Plaintiff relies heavily upon the holdings in *Jader v. Principal Mutual Life Insurance Company*, 723 F.Supp. 1338 (D.Minn.1989) (Murphy, J.), and *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir.1990), cert. denied, — U.S. —, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991). The Court recognizes the instruction of the Supreme Court in the *Firestone* decision that, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone Tire & Rubber Company v. Bruch,* supra 489 U.S. at 115, 109 S.Ct. at 956. The Court also recognizes that Title 29 U.S.C. § 1103(a) requires that the "assets of an employee benefit plan shall be held in trust by one or more trustees," but that the trust requirements of that Section do not apply to the assets of a plan "which consist of insurance contracts or policies issued by an insurance company qualified to do business in a State." *Title 29 U.S.C. § 1103(b)(1).* Consequently, insofar as the basis for the deferential standard of review was the trust-like nature of most ERISA plans, the application of that standard might be somewhat dubious when no trust assets are present. *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, supra at 1561 (citing and quoting from *Moon v. American Home Assurance Co.*, 888 F.2d 86, 89 (11th Cir.1989)); and cf., *Johnson v. State Mutual Life Assurance Co. of America*, 942 F.2d 1260, 1262 (8th Cir.1991). Nevertheless, the construction of the "waiting period" at issue here is one which is not dictated by MetLife, but by the terms and conditions of the plan documents other than MetLife's insurance policy, as that policy does not expressly address the manner in which the "waiting period" requirement should be administered.[10] Moreover,

dent purposes and their identification as the "delegates" of the Committee is sufficiently clear and precise to preclude their exception from the general grant of discretionary authority that the Committee obviously intended.

10. The insurance policy addresses the "waiting period" as follows:

If you become an Employee after June 1, 1990, your Personal Benefits Eligibility Date is the day after the date you complete the period of continuous service applicable to you. If no period of continuous service is applicable to you, your Personal Benefits Eligibility Date is the day you become an Employee of a Participating Cooperative.
Exhibit B to the *Stipulation of Facts*, at page 8.

the record before the Court is without any evidence that MetLife has failed to adhere to the procedural requirements of ERISA, or has failed to consider the evidence available to it as had been the case in *Jader* and, to a lesser extent, in *Brown*. Nor has the Plaintiff produced any evidence that MetLife proceeded to adjudicate this claim in bad faith or with an exercise of discretion which was tainted by self-interest over and above the facial existence of a conflict of interest. Inasmuch as the facial conflict of interest is present as a practical consequence of MetLife functioning as the adjudicator for group life insurance claims, this Court will apply the arbitrary and capricious standard of review, with the referenced conflict of interest being weighed as a factor in determining whether there has been any abuse of discretion by MetLife.[11]

B. *Legal Analysis.* In denying the Plaintiff's claim for benefits, MetLife explained its reasoning in the following terms:

Employment records indicate employer benefit enrollment, IRS form W–4 and employment eligibility verification were

signed by Mr. Whiteside on September 4, 1990. Therefore, the one month waiting period for insurance eligibility means a calendar month and would not be concluded until October 4, 1990. Since Mr. Whiteside died on October 1, 1990, we must consider our original denial of May 13, 1991 as proper.

Exhibit 1 to the *Affidavit of Paul Riemer.*

The Plaintiff challenges MetLife's adoption of a "calendar month" definition for the calculation of the "one month waiting period." The Plaintiff's challenge to this reasoning is two-pronged:

1. The Plaintiff alleges that Mr. Whiteside worked every "regular working day" during the month of September, 1990 and, therefore, he completed "one month of continuous full-time employment" prior to his death on October 1, 1990; and,

2. The Plaintiff contends that Mr. Whiteside's date of hire was August 14, 1990, when his application for employment with the Cooperative was accepted and, therefore, he would have been eligi-

---

The provisions of the insurance policy do not define "continuous service," and reference must be made to the provisions of the Summary Plan Description [Exhibit D to the *Stipulation of Facts*] and to the Administrative Manual [Exhibit C to the *Stipulation of Facts*]. Notably, the Cooperative could have elected to waive the waiting period had it chosen to do so, and the manner of calculating the expiration of the waiting period is illustrated, not in the language of the insurance policy, but in the Administrative Manual. Applying the language of the Summary Plan Description, that "[c]overage begins after one month of continuous full-time employment," MetLife concluded that Mr. Whiteside would not be covered by the group life insurance policy until October 4, 1990. However, since Mr. Whiteside became an employee of the Cooperative after June 1, 1990, the eligibility provision from the insurance policy, which is quoted above, would not render Mr. Whiteside eligible for benefits until one day after he completed his "one month of continuous full-time employment," i.e., on October 5, 1990. Apparently, MetLife opted for an application of the waiting period that was consonant with the plan documents, other than MetLife's insurance policy, and that had the effect of producing a shorter eligibility period, albeit by one day.

**11.** The holding of the Court in *Brown* is instructive:

[W]e hold that when a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest. That is, a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries.

*Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* supra at 1566–67.

The Court expressly noted that "[i]t is fundamental that the fiduciary's interpretation first must be "wrong" from the perspective of de novo review before a reviewing court is concerned with the self-interest of the fiduciary." *Id.,* at 1566 n. 12 (citing, *Denton v. First National Bank of Waco,* 765 F.2d 1295, 1304 (5th Cir. 1985)). As subsequent portions of this decision will reflect, this Court concludes that MetLife's interpretation of the pertinent plan language was not wrong and no resulting shift in the burden of proof, as required by the holding in *Brown,* is necessitated here.

ble for benefits within one month after that date.

Although the arguments of the Plaintiff are creative and have been forcefully presented, they are fatally unsound.

■ First, the Court notes that the provisions of the Cooperative's collective bargaining agreement preclude the viability of any argument that Mr. Whiteside was "employed" throughout the month of September, 1990. Article VIII, Section 1 of the labor agreement provides as follows:

> Holidays—The following holidays shall be observed with full pay: New Year's Day, Memorial Day, July the 4th, Labor Day, Thanksgiving Day, Thanksgiving Friday, Christmas Day, Christmas Eve Day, New Year's Eve Day, all of Good Friday, and one personal or floating holiday by mutual agreement and approval of Management.

The record before the Court is uncontroverted that Mr. Whiteside was neither called upon to work for the Cooperative on Labor Day nor, more importantly, was he paid for that day. If Mr. Whiteside had been an employee of the Cooperative on Labor Day of 1990, his employment contract with the Cooperative would have required the payment of holiday pay for that date. The uncontradicted absence of any payment of wages by the Cooperative to Mr. Whiteside for the Labor Day holiday of 1990 lends strong support to MetLife's conclusion that Mr. Whiteside was not an employee of the Cooperative prior to September 4, 1990. Moreover, the plan documents make clear that "employee" status is not determined by the acceptance of an employment application but, rather, by the dual acts of actively working for the employer and of receiving earnings. Here, until September 4, 1990, Mr. Whiteside was neither actively working for the Cooperative, nor was he earning wages or being paid for services by the Cooperative. By definition, therefore, Mr. Whiteside could not be credited for any full-time employment until September 4, 1990, since that was the first day on which he qualified for the receipt of wages for services actively performed for the Cooperative.

In contrast, the Plaintiff's suggested construction of the "one month of continuous full-time employment" requirement ignores the definition of "employee" which is used consistently in the plan documents, or renders that definition a nullity. The Courts of this Circuit have steadfastly required that, in construing the provisions of ERISA plan documents, "[e]ach provision should be read consistently with the others [and] the terms must be construed to render none of them nugatory." *Harper v. R.H. Macy & Co., Inc.*, 920 F.2d 544, 545 (8th Cir.1990); and see, *Jacobs v. Pickands Mather & Co.*, 933 F.2d 652, 656–57 (8th Cir.1991); *DeGeare v. Alpha Portland Indus., Inc.*, 837 F.2d 812, 816 (8th Cir.1988), vacated and remanded on other grounds, 489 U.S. 1049, 109 S.Ct. 1305, 103 L.Ed.2d 575 (1989). Although the Plaintiff's proffered construction has been finely tailored to produce the result that the Plaintiff prefers—namely, the award of life insurance benefits—that construction lacks a credible basis in the language of the plan documents and is unacceptable to this Court.

■ Equally unacceptable is the Plaintiff's argument that the Cooperative's acceptance of Mr. Whiteside's employment application on August 14, 1990, was sufficient to commence his employment with the Cooperative so as to credit that time against the one month waiting period. For the reasons expressed in response to the Plaintiff's first argument, the language of the plan documents cannot be pinched and strained, as the Plaintiff appears to do, in order to force-fit a construction which is designed to secure a preferred result.

The Court is mindful that the illustrative example provided in the Administrative Manual does include, without further definition or comment, the phraseology of "Date of Hire" as the triggering event which commences the expiration of the waiting period. Notably, the Date of Hire used in the illustration was identical to the date on which the hypothetical employee had completed an Enrollment for Participation in Retirement and Insurance Program forms, which is consistent with the actions of Mr. Whiteside on his date of

hire. The construction urged by the Plaintiff, that the acceptance of an employment application is the date of hire for the job applicant, would make no sense particularly where, as here, Mr. Whiteside was not immediately available for employment, but required two weeks' notice of any call to work. Despite the Cooperative's acceptance of Mr. Whiteside's employment application, Mr. Whiteside was free to reject employment with the Cooperative either before or after his starting date of September 4. As a consequence, any reduction in the waiting period based upon the Cooperative's acceptance of Mr. Whiteside's employment application, without any active work for pay by Mr. Whiteside, would render the plan's definition of "employee" nugatory.

█ Although the Court finds that the construction urged by the Plaintiff is forced, if not distorted, the obligation of the Court is to review the determination of MetLife, and any construction of the plan documents that determination would require, for reasonableness. See, *Finley v. Special Agents Mutual Benefit Association, Inc.*, supra at 620; *Oldenburger v. Central States Pension Fund*, 934 F.2d 171 (8th Cir.1991); *Firestone Tire & Rubber Company v. Bruch*, supra 489 U.S. at 111, 109 S.Ct. at 954. In determining whether MetLife's interpretation of the one month waiting period requirement is reasonable, the Court is to consider:

1. Whether MetLife's interpretation is consistent with the goals of the Plan;

2. Whether MetLife's interpretation renders any language in the Plan meaningless or internally inconsistent;

3. Whether MetLife's interpretation conflicts with the substantive or procedural requirements of the ERISA statute;

4. Whether MetLife has interpreted the words at issue consistently; and,

5. Whether MetLife's interpretation is contrary to the clear language of the Plan.

*Finley v. Special Agents Mutual Benefit Association, Inc.*, supra at 621.

█ As the record in this case compellingly establishes, the goal of the Cooperative's employee benefit plan is to provide various perquisites of employment to those employees who have retained their employment for a sufficient period of time to be eligible for the receipt of those benefits. As noted, the Cooperative could choose the desired length of the qualifying period, from "no waiting period" to a waiting period of six months. Here, the Plaintiff would have the Court adopt a waiting period of no more than 27 days—the period from September 4 through October 1— which was not among the optional waiting periods from which the Cooperative could make its election. MetLife's interpretation of the waiting period is consistent with the goal of the plan that some period of employment, which would equate with a month of active, full-time work in exchange for pay, is required before coverage under the plan could be earned.

█ Not only does MetLife's interpretation of the waiting period requirement give full effect to all of the pertinent terms and conditions of the plan documents as an integrated whole, but it is also consistent with common sense practicalities. While not dispositive, state law can be used as a guide for fashioning the federal common law applicable to ERISA, so long as the state law provisions are not contrary to the dictates of ERISA. *Kirk v. Provident Life and Accident Insurance Co.*, supra at 505 n. 2; *Brewer v. Lincoln National Life Insurance Co.*, supra at 153. As codified in the canons of statutory construction for the State of Minnesota, MetLife's interpretation of the waiting period provision is consistent with provisions of Minnesota Statutes Section 645.14.[12] The construction

---

12. Section 645.14 provides as follows:
   When, in any law, the lapse of a number of months before or after a certain day is required, such number of months shall be computed by counting the months from such day, excluding the calendar month in which such day occurs, and including the day of the month in the last months so counted having the same numerical order as the day of the month from which the computation is made, unless there be not so many days in the last month so counted, in which case the period

adopted by MetLife is not only easy to apply, but it also assures that all employees under the plan will be treated on an objectively identical basis.

As previously noted, MetLife's interpretation neither renders any language of the Plan meaningless or internally inconsistent, nor is the interpretation contrary to the clear language of the Plan. Moreover, the interpretation adopted by MetLife is entirely consistent with common understandings of the words used. As recently reconfirmed in *Finley v. Special Agents Mutual Benefit Association, Inc.,* supra at 622, quoting, *Central States, S.E. and S.W. Areas Pension Fund v. Independent Fruit and Produce Co.,* 919 F.2d 1343, 1350 (8th Cir.1990), cert. den., — U.S. ——, 112 S.Ct. 59, 116 L.Ed.2d 35 (1991), "words are to be given their plain and ordinary meaning as understood by a reasonable, average person." To the reasonable, average person, the plain and ordinary meaning of the term "month" is entirely consistent with MetLife's interpretation as advanced in this case.[13] In contrast, the interpretation of that term which has been fostered by the Plaintiff might be viewed as somewhat contrived. In this Court's judgment, a reasonable layperson could not readily deduce that a requirement of "one month of continuous full-time employment" would, nonetheless, permit the exclusion of certain Saturdays, Sundays and Holidays in order to qualify an employee for benefit eligibility. Nor, in this Court's view, would the reasonable layperson conclude that the plain and ordinary meaning of the term "employment" would properly connote, let alone denote, having an application for employment accepted in the form of a job offer when that offer is not accepted, by the actual exchange of personal services for wages, until several weeks later. Nevertheless, that is the construction that the Plaintiff would require.

Further, the uncontroverted proof of MetLife, as established through the affidavit of Paul Riemer, is that MetLife has had the usual custom and practice of calculating the passage of "one month" by taking the numbered day from which the counting commences and ending with the same numbered day in the next month. Given this record, the Court concludes that MetLife's interpretation of the waiting period, which resulted in the denial of the Plaintiff's request for group life insurance benefits, was reasonable and, therefore, was not arbitrary or capricious.[14]

The Court readily acknowledges that some other construction of the provisions in question was certainly possible, but the Court is at a loss to proffer any such construction that is, nonetheless, plausible, does justice to the plan documents as a whole, and is not driven by an outcome determinative result. Any time that the coverage of an employee benefit plan is not universal, line-drawing becomes a necessary evil. *Burnham v. Guardian Life Insurance Company of America,* 873 F.2d 486, 490 (1st Cir.1989). Here, the Court

---

computed shall expire with the last day of the month so counted.

**13.** Although cited by the Plaintiff for other reasons, the Court notes that several of the decisions, upon which the Plaintiff has relied, have adopted the methodology of calculating a month which is similar or identical to that followed by MetLife. See, e.g., *Davis v. Nationwide Life Insurance Co.,* 450 So.2d 549 (Fla.App. 5th Dist.1984); *Gunn v. Aetna Life & Casualty, Inc.,* 629 S.W.2d 59 (Tex.App.1981). These cases, as well as the secondary authorities cited by MetLife, demonstrate that MetLife's calculation of the waiting period in this case is not, in any sense of the word, unique but is a commonly confronted practice. See, e.g., 86 C.J.S., Time, § 10, at 837–38 ("[T]he word 'month' in whatever connection used, signifies a calendar month, regardless of the number of days its

contains, unless there is something to indicate that a meaning to the contrary was intended. * * * [I]t runs from a given day in one month to a day of the corresponding number in the next specified succeeding month.").

**14.** The Court would note that, even if a less deferential standard of review were applied, MetLife's interpretation would be sustained inasmuch as the Plaintiff failed in her burden of proving that Mr. Whiteside's employment came within the express language of the group life insurance coverage. *Oldenburger v. Central States Pension Fund,* supra at 174. The Court having found that the interpretation of MetLife was not wrong, the burden of proof did not shift to MetLife as would otherwise be required by *Brown v. Blue Cross and Blue Shield of Alabama, Inc.,* supra. See, footnote 11, supra.

concludes that the line was drawn by Met-Life at a logical and reasonable point. As courts have noted elsewhere, "[t]hat a seeming inequity may result on occasion is not fatal to the plan's legitimacy: after all, as we said in an earlier ERISA case, 'the necessity to draw hard boundary lines, inevitably adversely affects some individuals who find themselves on the wrong side of a line.' " *Id.*, (citing, *Rueda v. Seafarers International Union of North America*, 576 F.2d 939, 942 (1st Cir.1978)). The Court is satisfied that if the line were drawn in this case to accommodate the claim of the Plaintiff, such a redrafting of the provisions here at issue would surely chafe some other litigant who should find herself on the other side of that redrafted line. Here, the line drawn by MetLife and accepted by the Court ensures that the perceived exigencies of this case do not result in the promulgation of "bad law." *United States v. Clark*, 96 U.S. 37, 49, 24 L.Ed. 696 (1877) (Harlan, J., dissenting).

THEREFORE, The Court finding no genuine issue of material fact, it is:

ORDERED:

1. That the Plaintiff's Motion for Summary Judgment shall be, and hereby is, denied.

2. That the Defendant's Motion for Summary Judgment shall be, and hereby is, granted.

3. That the Clerk be directed to enter Judgment in favor of the Defendant, but with the entry of Judgment being stayed for a period of 30 days after the date of this Order.